**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HARRISON JACKSON, | ) | CASE NO. 1:17-CV-01081 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| BRIGHAM SLOAN, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Harrison Jackson (hereinafter "Petitioner" or "Jackson"), challenges the constitutionality of his conviction in the case of *State v. Jackson*, Cuyahoga County Court of Common Pleas Case No. CR-13-574810-A. This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. Petitioner, *pro se*, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on May 2, 2017. (R. 1). On August 17, 2017, Warden Brigham Sloan ("Respondent") filed a Motion to Dismiss the petition as raising exclusively procedurally defaulted claims; Respondent also filed the state court record. (R. 5). Petitioner did not file any opposition or response. The court construed the motion as Respondent's Answer/Return of Writ and denied the motion as moot. For reasons set forth in detail below, it is recommended that the habeas petition be DISMISSED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence.") The Eighth District Court of Appeals (hereinafter "state appellate court") summarized the facts underlying Petitioner's conviction as follows:

{¶ 2} In May 2013, Jackson was charged with rape, in violation of R.C. 2907.02(A)(2), and kidnaping, in violation of R.C. 2905.01(A)(4), as a result of an incident that occurred on June 7, 1993. At a bench trial, the victim ("A.G.") testified that in 1993 she was a 35 year-old drug addict, who sold and used drugs. She knew Jackson, who was then 19 years old, because they sometimes smoked crack together, but she did not know him by any other name but "Cool Man."

{¶ 3} Sometime after midnight on June 7, 1993, while A.G. was sleeping, Jackson knocked on the door of the apartment where A.G. was temporarily living. He was looking for drugs, and A.G. told him she had none. A.G. testified that Jackson entered the apartment to use the bathroom, and A.G. went back to bed. Jackson subsequently entered A.G.'s bedroom and raped her. After the rape, A.G. walked to her sister's house, and her sister took her to the hospital where a nurse completed a rape kit. A.G. gave a statement to police while she was in the hospital, and the police report was admitted into evidence at trial.

{¶ 4} Jackson testified and told a different story. Jackson admitted that he came to A.G.'s apartment on the night of June 7, 1993, and that they had sexual intercourse. However, he stated that he came to A.G.'s apartment with some crack he had stolen and traded some of the crack for sex. He maintained the sex was consensual. After having sex, Jackson slept on the couch and left in the morning.

{¶ 5} Jackson further testified that he saw A.G. with another woman named Diane the day after the alleged rape, and Diane told Jackson that A.G. accused him of raping her. Jackson testified that he confronted A.G., who was nearby, about the accusation, and she denied it. According to Jackson, the three of them then got high together. Jackson acknowledged he has been known as "Cool Man" all his life.

{¶ 6} Two other witnesses testified at trial. Timothy Clark ("Clark"), an investigator in the Cuyahoga County Prosecutor's Office, testified that he

2

investigates "cold cases" in which DNA evidence was collected years ago but no suspect was identified at that time. He explained that many suspects now provide DNA samples in buccal swabs when they are arrested, and their DNA information is collected in the Combined DNA Index System ("CODIS") database. As DNA tests are performed in both new and cold cases, the results of these tests are entered into the same database. If the DNA from a recently tested sample matches DNA previously entered into the CODIS database, there is a "CODIS hit," which means the recently tested DNA matches an individual in the database.

{¶ 7} In this case, DNA from A.G.'s rape kit was sent to the Ohio Attorney General's Bureau of Criminal Investigation ("BCI") for DNA testing in 2011. In 2013, there was a CODIS hit. The DNA test results indicated that DNA contained in A.G.'s rape kit matched the DNA of "Harrison Jackson, a.k.a. Tyrone Jackson, Desmond Moss, and Harrison Moss."

{¶ 8} Once the CODIS hit was made, the case was assigned to Clark, who reviewed the police report of the rape. Clark also called and interviewed A.G., who had stopped using drugs and started a new life in Atlanta, Georgia. After A.G. confirmed the allegations, Clark sent a photo array of suspects to Cynthia Nwokocha ("Nwokocha"), who was an investigator in the Fulton County District Attorney's Office in Atlanta, Georgia. Nwokocha testified that she did not know any of the individuals pictured in the line up. When Nwokocha presented the line up to A.G., A.G. immediately identified Jackson as the man who raped her and called him "Cool Man." Nwokocha subsequently mailed the line up back to Clark.

{¶ 9} Clark interviewed Jackson following his arrest. Jackson admitted that he knew A.G. and that he had sex with her on June 7, 1993. Clark took another buccal swab that confirmed the results of the earlier DNA testing.

{¶ 10} The trial court found Jackson guilty of both the rape and kidnaping charges and referred him to the Court Psychiatric Clinic for a H.B. 180 classification assessment. At the sentencing hearing, the court sentenced Jackson to 8–25 years in prison and classified him as a sexual predator.

*State v. Jackson*, No. 100877, 2014-Ohio-5137 at ¶¶ 2-10, 2014 WL 6483274 (Ohio Ct. App., Nov. 20, 2014).

## II. Procedural History

### A.   Conviction

On May 29, 2013, the Cuyahoga County Grand Jury issued an indictment charging Jackson with one count of rape in violation of O.R.C. § 2907.02(A)(2) and one count of

3

kidnapping in violation of O.R.C. § 2905.01(A)(4). (R. 5-1, PageID# 76-77, Exh. 1). Jackson,

through appointed counsel, pleaded not guilty. (R. 5-1, PageID# 78, Exh. 2).

On September 17, 2013, the State filed a Bill of Particulars (R. 5-1, PageID# 79-80, Exh. 3)

and a response to Jackson's discovery requests on the same date. (R. 5-1, PageID# 81-86, Exh.

4). On October 30, 2013, the trial court found Jackson guilty as charged after a bench trial. (R. 5-

1, PageID# 99, Exh. 5). For sentencing purposes, the court merged the two counts as allied

offenses. (R. 5-1, PageID# 101, Exh. 7). The court imposed an eight (8) to twenty-five (25) years

imprisonment for the rape conviction and designated Jackson as a sexual predator. *Id.*

**B.  Direct Appeal**

On January 13, 2014, Jackson, through new counsel, filed a notice of appeal (R. 5-1,

PageID# 102, Exh. 8) with the Ohio Eighth District Court of Appeals ("state appellate court")

and raised the following assignments of error:

1.  The trial court committed error when it imposed a period of post-release control on Mr. Jackson although the offense of which he was convicted occurred more than three years before the effective date of Am. Sub. S.B. 2.

2.  The trial court committed plain error when it found Mr. Jackson to be a sexual predator without holding a classification hearing as mandated by former R.C. 2950.09(B)(1)

3.  The verdicts are not supported by the manifest weight of the evidence.

4.  The trial court committed plain error and imposed a sentence not authorized by law when it sentenced Mr. Jackson to an indefinite term of 8–25 years in prison under pre-S.B. 2 sentencing law.

(R. 5-1, PageID# 108-123, Exh. 9).

On November 20, 2014, the state appellate court affirmed in part and vacated in part the

judgment of the trial court. (R. 5-1, PageID# 146-164, Exh. 12). The court affirmed the

4

convictions, but vacated the sentence and remanded the matter so that the trial court could hold a sexual offender classification hearing and also for a new sentencing hearing to apply the provisions of H.B. 86. *Id.*

On November 26, 2014, the State appealed the decision of the state appellate court to the Ohio Supreme Court. (R. 5-1, PageID# 165-166, Exh. 13). In the memorandum in support of jurisdiction, the State raised the following proposition of law:

> I.      A defendant who commits an offense prior to July 1, 1996 is subject to law in effect at the time of the offense and not subject to sentencing provisions of S.B. 2 effective July 1, 1996 and H.B. 86 effective 2011.

(R. 5-1, PageID# 181-191, Exh. 14). Jackson, through counsel, responded to the State's brief, but did not independently appeal, cross-appeal, or raise his own propositions of law. (R. 5-1, PageID# 192, Exh. 15). On May 20, 2015, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to Ohio S.Ct.Prac.R. 7.08(B)(4). (R. 5-1, PageID# 201, Exh. 16). The State moved for reconsideration, but the Supreme Court denied the motion. (R. 5-1, PageID# 202-208, Exhs. 17 & 18).

**C. Resentencing**

On August 27, 2015, Jackson, with counsel, appeared before the trial court for resentencing. For the purposes of sentencing, the court merged the rape and kidnapping convictions as allied offenses, and sentenced Jackson to a term of ten (10) years in prison for rape. (R. 5-1, PageID# 209, Exh. 19). On September 29, 2015, the court held a hearing on Jackson's sexual offender designation. Following an updated evaluation by the Court Psychiatric Clinic, the court classified Jackson as a sexual predator pursuant to O.R.C. § 2950.03. (R. 5-1, PageID# 210, Exh. 20). Jackson was also advised that five years of post-release control was part of his sentence. *Id.*

5

**D. Appeal from Resentencing**

On October 28, 2015, Jackson, through counsel, filed a notice of appeal from the September 29, 2015, resentencing. (R. 5-1, PageID# 211-212, Exh. 21). On January 29, 2016, Jackson's counsel filed a motion to withdraw and a concomitant *Anders*[1] brief suggesting the trial court may have erred in classifying Jackson a sexual predator. (R. 5-1, PageID# 221-232, Exhs. 22 & 23).

On February 3, 2016, the state appellate court held counsel's motion to withdraw in abeyance until it conducted its own merits review pursuant to *Anders*. (R. 5-1, PageID# 233, Exh. 24). The court also afforded Jackson until March 18, 2016, to file a *pro se* appellate brief. *Id*. Noting that Jackson had not filed a *pro se* brief, on April 21, 2016, the state appellate court concluded "that the appeal is wholly frivolous under *Anders*," granted counsel's motion to withdraw, and dismissed the appeal. (R. 5-1, PageID# 234-241, Exh. 25).

On May 18, 2016, Jackson moved to re-instate his appeal and asked the court to allow him thirty (30) days to file his appellate brief. (R. 5-1, PageID# 242-25, Exh. 26). The state appellate court granted the motion and advised Jackson that his appellate brief was due before July 6, 2016. (R. 5-1, PageID# 246, Exh. 27).

Jackson filed a motion to consolidate his resentencing appeal with his first direct appeal, asking that the latter be reopened pursuant to Ohio Appellate Rule 26 "so additional claims can be raised via the face of the record." (R. 5-1, PageID# 247, Exh. 28). The court denied the motion. (R. 5-1, PageID# 248, Exh. 29).

On December 12, 2016, the state appellate court dismissed the appeal for want of

---

[1] *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 18 L.E. 2d 493 (1967).

prosecution after Jackson failed to submit an appellate brief, noting that Jackson had previously received an extension until November 30, 2016, to file his brief. (R. 5-1, PageID# 249, Exh. 30). Jackson did not appeal this decision to the Supreme Court of Ohio.

**C. Application to Reopen Pursuant to Ohio App. R. 26(B)**

On July 7, 2016, Jackson, *pro se*, filed a delayed application to re-open his appeal. (R. 5-1, PageID# 250-258, Exh. 31). On October 21, 2015, the state appellate court denied Jackson's delayed application for reopening, finding Jackson had failed to follow the mandates of Ohio App. R. 26(B)(2)(d) in that he had not attached "a sworn statement of the basis for the claim that appellate counsel's representation was deficient." (R. 5-1, PageID# 259-262, Exh. 32). In addition, the court further found that the application failed to clearly set forth one or more assignments of error as required by Ohio App. R. 26(B)(2)(c). *Id*.

On November 10, 2016, Jackson, *pro se*, filed a notice of appeal with the Ohio Supreme Court. (R. 5-1, PageID# 263, Exh. 33). In his memorandum in support of jurisdiction, Jackson set forth the following propositions of law:

1) Mr. Jackson U.S. Constitutional right to due process was violated when the 8th District Court of Appeals refused to let Mr. Jackson file a delayed application to re-open pursuant to Appellate Rule 26(B).

2) Mr. Jackson recieved [sic] ineffective assistance of counsel at trial stage when trial counsel never moved to dismiss via statute of limitations reason. (U.S. Const. right to ineffective [sic] assistance of counsel).

(R. 5-1, PageID# 273-279, Exh. 34).

On February 22, 2017, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to Ohio S.Ct.Prac.R. 7.08(B)(4). (R. 5-1, PageID# 287, Exh. 35).

**D.    Federal Habeas Petition**

On May 2, 2017, Petitioner, *pro se*, filed a Petition for Writ of Habeas Corpus asserting

7

the following grounds for relief:

**GROUND ONE**: Ineffective trial counsel

*Supporting Facts*: (1) Did not file motion to dismiss for pre-indictment delay; (2) Statue [sic] of limitation issues; (3) Discovery issues; (4) Jurisdiction issues; (5) No statement from alleged victim; (6) *State v. Martin*, *State v. Porter*, *State v. Young*

**GROUND TWO**: Denial of effective assistance of appellate counsel

*Supporting Facts*: Failed to raise sufficient evidence, ineffective assistance of trial counsel and other U.S. Constitutional right violations.

**GROUND THREE**: U.S. Constitutional right to due process

*Supporting Facts*: Evidence statue [sic] of limitations expired.

**GROUND FOUR**: "U. S. Sufficient of Evidence issues."

*Supporting Facts*: Actual Innocence

(R. 1, PageID# 1-15).

### III. Exhaustion and Procedural Default

**A. Exhaustion Standard**

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001) ("a petitioner cannot

circumvent the exhaustion requirement by failing to comply with state procedural rules.")
(citations omitted).

**B. Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the
petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure
to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v.
Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).
A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally
default a claim by failing to comply with state procedural rules in presenting his claim to the
appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to
petitioner's failure to comply with the procedural rule, the state court declines to reach the merits
of the issue, and the state procedural rule is an independent and adequate grounds for precluding
relief, the claim is procedurally defaulted.[1] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue
that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*,
526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows
the petitioner to raise the claim, it is procedurally defaulted. *See, e.g., Engle v. Isaac*, 456 U.S.
107, 125-130 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second

---

[1] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is
procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the
petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts
actually enforced the state procedural sanction, (3) whether the state procedural bar is an
independent and adequate" state ground on which the state can foreclose federal review, and (4)
whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138-39; *accord Barkley
v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to determining whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003), *abrogated on other grounds as recognized in English v. Berghuis*, 529 Fed. App'x 734, 744-45 (6th Cir. Jul. 10, 2013).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at

138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See, e.g., United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust*, 17 F.3d at 161-62. Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 617 (6th Cir. 2003).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent, in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749-50. Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *accord Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007) (Katz, J.)

## C. Analysis

Respondent contends that all four of Petitioner's grounds for relief are procedurally defaulted. (R. 5). Petitioner has not responded. As explained below, the court agrees that all four of Petitioner's grounds for relief are either unexhausted or procedurally defaulted.

Regardless of how the court construes Petitioner's four perfunctory grounds for relief,[2] it is not entirely clear whether these same arguments were ever raised before any state court at any level. However, assuming for the sake of argument only that these four grounds were relief were raised in some form in a state court, Petitioner has either failed to exhaust these grounds or defaulted on them at each round of state court proceedings.

### 1. Direct Appeal

To the extent any of Petitioner's four grounds for relief were raised during the first stage of his direct appeal, Petitioner never appealed the state appellate court's decision to the Supreme Court of Ohio. As set forth in the procedural history above, only the State of Ohio filed an appeal and Petitioner, though he responded with a brief opposing the State's single proposition of law, did not attempt to cross-appeal.[3] (R. 5-1, PageID# 165-166, 181-200, Exh. 13, 14 & 15). Therefore, on direct appeal, Petitioner never completed a full-round of review before the state courts. "Federal courts lack jurisdiction to consider a habeas petition claim that was not fairly presented to the state courts." *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004); *accord Fulcher v. Logan County Circuit Court*, 459 Fed. App'x 516, 522 (6th Cir. 2012) ("The very purpose of the exhaustion requirement is to 'give the state courts an opportunity to act on [a petitioner's] claims before he presents those claims to a federal court in a habeas petition' .... Accordingly, the claim was left unexhausted and is now procedurally defaulted.")

---

[2] Petitioner generally asserts that he was deprived of the effective assistance of both trial and appellate counsel, deprived of due process, and possibly that his conviction was not supported by sufficient evidence. (R. 1). There is little explanation for the basis of these assertions.

[3] Ohio S. Ct. Prac. R. 7.01(A)(2) allows "any other party" to file either a notice of appeal or cross appeal within the regularly prescribed time limits for filing a jurisdictional appeal or within ten days after the first party's notice of appeal was filed.

In order for a federal habeas claim to have been considered "fairly presented" to a state's courts, the claim must have been raised before the state's highest court, as only in this manner will the state courts have been provided with a fair opportunity to pass upon and correct alleged violations of federal rights. *See Anderson v. Harless*, 459 U.S. 4, 6, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982); *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971); *Coleman v. Thompson*, 501 U.S. 722, 735, 111 S. Ct. 2546, 115 L. Ed. 2d 640(1991). "Fair presentation of an issue requires that a petitioner give state courts a full opportunity to resolve any constitutional issues by involving 'one complete round' of the state's appellate review system." *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003) (*quoting O'Sullivan*, 526 U.S. at 845).

Petitioner failed to exhaust claims raised on direct appeal before the state appellate court, because he did not file an appeal with the Supreme Court of Ohio. Jackson's failure to fairly present a federal ground for relief to the Ohio Supreme Court, furthermore, "constitutes an adequate and independent state procedural rule barring habeas review." *Hines v. Brunsman*, 2010 WL 750176 at *18 (N.D. Ohio Feb. 26, 2010) (*citing Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985); *Rust*, 17 F.3d at 160; *Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004)).

### 2. Appeal from Resentencing

To the extent any of Petitioner's four grounds for relief were raised during his second appeal after his resentencing, Petitioner similarly never appealed the state appellate court's decision dismissing that appeal to the Supreme Court of Ohio. Therefore, Petitioner also failed to exhaust any claims that were raised during this round of appeal.

In addition, Petitioner also procedurally defaulted his claim, because the state appellate court dismissed his appeal for "want of prosecution" when he failed to file an appellate brief. (R. 5-1, PageID# 249, Exh. 30). In *Elrich v. McCullion*, the Sixth Circuit Court determined that a

13

petitioner did not fairly present his claims to the Ohio state courts because the state appellate

court had dismissed the appeal for want of prosecution. 861 F.2d 720 (6th Cir. 1988) (finding that

petitioner was barred from seeking further review in the Ohio courts by the doctrine of *res*

*judicata*) (*citing State v. Perry*, 10 Ohio St.2d 175, 180, 226 N.E.2d 104, 108 (Ohio 1967)); *see*

*also James v. Warden, Lebanon Corr. Inst*., No. 1:06CV212, 2007 WL 2326867 at *4 (S.D. Ohio

Aug. 10, 2007) (finding the Supreme Court of Ohio's dismissal of an appeal for failure to

prosecute is a "'firmly established and regularly followed'" practice utilized by all courts, not

only the courts of Ohio"); *Jones v. Bunting*, No. 3:12CV1034, 2014 WL 4956176, at *11 (N.D.

Ohio Sept. 30, 2014) (same); *Crouse v. Bradshaw*, No. 1:12 CV 970, 2013 WL 5774702, at *11

(N.D. Ohio Oct. 23, 2013) (same).

  Thus, the court finds Petitioner has procedurally defaulted any claims raised in his appeal

from his resentencing.

### 3. Application to Reopen Pursuant to Ohio App. R. 26(B)

  Finally, to the extent any of Petitioner's four grounds for relief were raised in his App. R.

26(B) application to reopen his appeal—his last round of state court filings— those claims are all

procedurally defaulted. As recounted in the procedural history of this matter set forth above, the

state appellate court denied Jackson's App. R. 26(B) delayed application for reopening for two

reasons. (R. 5-1, PageID# 259-262, Exh. 32).

  First, the state appellate court found that "Jackson has failed to comply with App.R.

26(B)(2)(d), which mandates that the applicant must attach to the application for reopening 'a

sworn statement of the basis for the claim that appellate counsel's representation was deficient.'"

*Id*. Second, the court further found that "App.R. 26(B)(2)(c) mandates that the application for

reopening must contain '[o]ne or more assignments of error or arguments in support of

assignments of error that were not considered on the merits *** by any appellate court.' Herein, Jackson has not presented this court with any proposed assignments of error or arguments that demonstrate a claim of ineffective assistance of appellate counsel," rendering his application "fatally defective." *Id.*

Another decision from this district has previously explained that a petitioner's failure to adhere to the requirements of Ohio App. R. 26(B)(2)(d) and the state appellate court's enforcement of the said requirements constitutes a procedural default foreclosing federal habeas review:

> [Petitioner] Harrison presented Ground One in his application to reopen his direct appeal pursuant to Oh.App. R. 26(B). An application to reopen must contain:
>
> > (d) A sworn statement of the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or arguments raised pursuant to division (B) (2)(c) of this rule and the manner in which the deficiency prejudicially affected the outcome of the appeal, which may include citations to applicable authorities and references to the record[.]
>
> App. R. 26(B)(2)(d); *State v. Lechner*, 72 Ohio St.3d 374, 650 N.E.2d 449 (Ohio 1995) (sworn statement required by App. R. 26(B)(2)(d) is "mandatory"). The Ohio Court of Appeals denied Harrison's application as procedurally defective because Harrison failed to notarize his application as required by App. R. 26(B)(2)(d). *State v. Harrison*, 2011 WL 550106 at *1.
>
> Applying the *Maupin* factors, the undersigned finds that Ground One is procedurally defaulted. First, there is a state procedural rule that Harrison failed to comply with. *See* App. R. 26(B)(d)(2) (requiring a sworn statement). Second, the state Court of Appeals enforced the procedural rule when it denied Harrison's application because Harrison did not notarize his application as required by App. R. 26(B)(d)(2). *See State v. Harrison*, 2011 WL 550106 at *1. Third, the state procedural rule is an adequate and independent state ground on which the state can foreclose review of Harrison's claim. *See id.* ("the failure to support an application for reopening with a sworn statement is a sufficient ground for denying the application," citing *State v. Waller*, 2006 WL 2692590 (Sept. 21, 2006), reopening disallowed, 2007 WL 4126657, *2 (Nov. 16, 200 7); *State v. Lechner*, 72 Ohio St.3d 374, 650 N.E.2d 449 (Ohio 1995)).

*Harrison v. Ohio Dep't of Rehab. & Correction*, No. 1:12 CV 202, 2015 WL 542338, at *12–13

(N.D. Ohio Feb. 10, 2015) (Gaughan, J., accepting Report and Recommendation of Burke, M.J.).

Other federal district courts in Ohio have come to similar conclusions. *See, e.g., Grant v.*

*Sheldon*, No. 1:11CV942, 2012 WL 3495387, at *12 (N.D. Ohio June 11, 2012) (Limbert, M.J.).

There, the court indicated:

> Applying the *Maupin* test, there is clearly a state filing requirement of a
> particularized affidavit and Petitioner did not submit such an affidavit. Second,
> the state did enforce the requirement against Petitioner and held his Rule 26(B)
> application to be procedurally defaulted based in part upon this deficiency. Third,
> a review of Ohio caselaw shows that the affidavit requirement in Rule 26(B)
> applications is well-established and regularly enforced.

*Id.*, *report and recommendation adopted*, 2012 WL 3494194 (N.D. Ohio Aug. 15, 2012); *see*

*also Smith v. Warden, Toledo Corr. Facility*, No. 3:10CV00367, 2011 WL 4337092, at *3 (S.D.

Ohio July 18, 2011) ("A sworn statement is mandatory under App.R. 26(B)(2)(d). Smith failed to

exhaust state court remedies resulting in a procedural default."), *report and recommendation*

*adopted*, 2011 WL 4345001 (S.D. Ohio Sept. 15, 2011); *Thompson v. Anderson*, No.

1:08CV2913, 2010 WL 4026121, at *7 (N.D. Ohio Oct. 13, 2010) (Lioi, J.) (same).

Based on the above case law, Petitioner's failure to comply with Ohio App. R.

26(B)(2)(d), and the state appellate court's enforcement of the procedural rule, results in a

procedural default foreclosing consideration of any grounds for relief that Petitioner attempted to

raise therein.[4] Finally, Jackson's subsequent appeal of the denial of his App. R. 26(B)

application to the Ohio Supreme Court does not negate his default. Even though the Supreme

---

[4] In the interests of judicial economy, the court foregoes any discussion of whether failure to
comply Ohio App.R. 26(B)(2)(c), the second reason given by the state appellate court for
dismissing the application, similarly constitutes an independent and adequate ground for
foreclosing federal habeas review.

Court of Ohio did not specify why it was denying Petitioner's appeal, federal habeas courts "will not assume that the [state] court did not observe the applicable procedural bar. Instead, we will assume that had the state court addressed petitioner's due process claim, it would not have ignored its own procedural rules and would have enforced the procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996); *accord Hayes v. Warden, Franklin Med. Ctr. Zone B*, No. 1:12-CV-740, 2013 WL 3944443, at *14 (S.D. Ohio July 31, 2013) (finding that where the Ohio Supreme Court was entirely silent as to its reasons for denying an appeal, "it must be assumed that the state court enforced the applicable procedural bar to review"), *report and recommendation adopted sub nom. Hayes v. Warden, Franklin Med. Ctr. Zone*, 2013 WL 4761140 (S.D. Ohio Sept. 4, 2013).

In sum, unless Petitioner can establish "cause and prejudice" for his default or a credible claim of "actual innocence," his petition should be dismissed as procedurally defaulted.

### 4. Cause and Prejudice

As discussed above, Petitioner has defaulted all of his grounds for relief. However, under *Maupin*, 785 F.2d at 138-139, default may be excused where a petitioner demonstrates both "cause" and "prejudice." Petitioner did not respond to Respondent's motion to dismiss on procedural default grounds. "Because petitioner has failed to allege cause and prejudice, the district court [is] precluded from reviewing his claims." *Elrich*, 861 F.2d at 720. Nevertheless, even if the court were to infer from the habeas petition that Jackson would argue that his default should be excused based on the ineffective assistance of appellate counsel, such an argument would fail. It is true that ineffective assistance of appellate counsel can constitute cause sufficient to excuse a procedural default. *Landrum v. Mitchell*, 625 F.3d 905, 916 (6th Cir. 2010) *cert. denied*, 132 S. Ct. 127, 181 L. Ed. 2d 49 (2011); *Howard v. Bouchard*, 405 F.3d 459, 478 (6th

17

Cir. 2005). That being said, "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (*quoting Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000)). As explained by the Sixth Circuit Court of Appeals:

> The "cause" standard in procedural-default cases requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise a claim in the state courts. *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (internal quotation marks omitted). Such factors may include interference by officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing of a factual or legal basis for a claim that was not reasonably available. *Id.* at 493-94, 111 S.Ct. 1454. "[A] procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim **only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself**." *Edwards v. Carpenter*, 529 U.S. 446, 450-51, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

*Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012) (emphasis added).

Here, Petitioner has not set forth any cause (*i.e.* any external objective factor), as to why he defaulted his ineffective assistance of appellate counsel claim. Thus, he cannot use the alleged ineffectiveness of appellate counsel as cause to excuse the default of his other claims.

**5. Actual Innocence**

A petitioner's procedural default can also be excused where a petitioner is actually innocent, in order to prevent a "manifest injustice." *Coleman*, 501 U.S. 722 at 749-50, 111 S. Ct. 2546, 115 L. Ed. 2d 640. Other than writing the isolated phrase "actual innocence" under the supporting facts of ground four of his petition without accompanying argument or explanation (R. 1, PageID# 10), Jackson has presented nothing that would justify this court's consideration of an actual innocence claim.

## IV. Conclusion

For the foregoing reasons, it is recommended that Jackson's Petition be DISMISSED.

s/ David A. Ruiz
United States Magistrate Judge

Date: April 24, 2019

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981);** *Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**